**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NORBERTO SALAZAR-LUVIANO,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General of the United States,
                    *Respondent.*

No. 05-70505

Agency No.
A36-165-328

OPINION

On Petition for Review of an
Order of the Board of Immigration Appeals

Argued and Submitted
November 19, 2008—Pasadena, California

Filed December 23, 2008

Before: Myron H. Bright,* Michael Daly Hawkins, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Hawkins

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

16681

## COUNSEL

David A. Schlesinger (presented argument) and Andrea Guerrero (authored briefs), Guerrero, Jacobs & Schlesinger, LLP, San Diego, California, for the petitioner.

Colette J. Winston (presented argument) and Janice K. Redfern (authored brief), U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Washington, D.C., for the respondent.

## OPINION

HAWKINS, Circuit Judge:

Is aiding and abetting an attempted escape from custody an "obstruction of justice" crime, and therefore an aggravated felony, within the meaning of the Immigration and Nationality Act ("INA") § 101(a)(43)(S)? Petitioner Norberto Salazar-Luviano ("Salazar-Luviano") argues that it is not and that he is therefore eligible for cancellation of removal under INA § 240A(a). We agree, grant his petition for review, and remand to the BIA for consideration of his request for cancellation of removal.[1]

---

[1] Salazar-Luviano argues in the alternative that, even if he had committed an aggravated felony, he would still be entitled to relief pursuant to former INA § 212(c). Because we conclude he has not committed an aggravated felony, we do not address this argument.

## I.  BACKGROUND

Salazar-Luviano is a fifty-five-year-old citizen of Mexico, originally admitted to the United States as a lawful permanent resident in 1976. He has lived in the Los Angeles metropolitan area for over thirty years with his wife, also a lawful permanent resident. As of 2005, Salazar-Luviano had four U.S. citizen children and five U.S. citizen grandchildren.

In 1987, Salazar-Luviano pled guilty to Aiding and Abetting an Escape from Custody, in violation of 18 U.S.C. § 751, for attempting to free illegal aliens who had been apprehended by the U.S. Border Patrol. The aliens had been in custody near the border, in a Border Patrol vehicle; no legal proceedings had yet been commenced against them. Salazar-Luviano was sentenced to one year in prison for aiding and abetting the attempted escape but served only seventy-five days.

Fourteen years later, Salazar-Luviano was caught assisting another alien to enter the country illegally and was charged with removability under INA § 237(a)(1)(E)(i), which renders removable "[a]ny alien who . . . knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C. § 1227(a)(1)(E)(i). In the removal proceedings giving rise to this appeal, Salazar-Luviano conceded removability and sought cancellation of removal under INA § 240A(a), which permits the Attorney General to "cancel removal" of an "inadmissible or deportable" alien who "has resided in the United States continuously for 7 years after having been admitted in any status." 8 U.S.C. § 1229b(a)(2).

Cancellation of removal is not available, however, to any resident who "has been convicted of any aggravated felony." INA § 240A(a)(3), 8 U.S.C. § 1229b(a)(3). A subsequent government investigation revealed that, since 1976, Salazar-Luviano had been convicted of six misdemeanor crimes,

including his 1987 conviction for aiding and abetting attempted escape from custody.

The Immigration Judge ("IJ") determined that Salazar-Luviano's 1987 conviction constituted an "aggravated felony" pursuant to INA § 101(a)(43)(S), which renders any "offense relating to obstruction of justice . . . for which the term of imprisonment is at least one year" an aggravated felony. 8 U.S.C. § 1101(a)(43)(S). In the IJ's view, "[a]n obstruction of justice occurs where there is an affirmative action knowingly undertaken in order to hinder or prevent apprehension, trial or punishment." Because Salazar-Luviano had "attempt[ed] to prevent an apprehension by the Service . . . [and] to hinder the immigration proceedings and removal of the escapees," his conviction qualified as an aggravated felony within the meaning of § 1101(a)(43)(S). The IJ accordingly denied Salazar-Luviano eligibility for cancellation of removal.

On appeal, the BIA affirmed, reasoning that aiding and abetting "is a specific intent crime," and that "aiding and abetting escape from lawful custody is an interference with the proceedings of a tribunal and/or law enforcement." Thus "aiding and abetting escape is an offense relating to obstruction of justice for purposes of § 1101(a)(43)(S) of the Act [and] the respondent is ineligible for cancellation of removal." Salazar-Luviano filed a timely petition for review.

## II.   DISCUSSION

### A.   Standard of Review & Analytical Framework

To determine whether attempted escape from custody constitutes an aggravated felony under § 1101(a)(43)(S), we first apply the "categorical approach" set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Renteria-Morales v. Mukasey*, ___ F.3d ___, 2008 WL 5192056, at *3-*4 (9th Cir. Dec. 12, 2008) (applying the *Taylor* categorical approach to determine whether a conviction for failure to appear in court

constitutes an aggravated felony under § 1101(a)(43)(S)) (citing *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1125 (9th Cir. 2006) (en banc)).

According to the categorical approach, our task is to determine what Congress meant by "an offense relating to obstruction of justice" by reference to the generic federal definition of the crime. *Renteria-Morales*, 2008 WL 5192056, at *3. Because Congress itself did not define the phrase "offense relating to obstruction of justice" in the INA, we defer to the BIA's "interpret[ation of] the elements of a generic obstruction of justice offense under § 1101(a)(43)(S) [as set forth in] *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889 (BIA 1999)." *Id.* at *7-*8 (according *Chevron* deference to *Espinoza-Gonzalez* with respect to interpretation of § 1101(a)(43)(S)).

After determining the elements of the generic crime listed in § 1101(a)(43)(S), we next identify the elements of the specific crime of conviction, in this case 18 U.S.C. § 751.[2] We do "not defer to the BIA's interpretations of state law or provisions of the federal criminal code," *id.* at *3 (citing *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005)), and instead must "review de novo whether the specific crime of conviction meets the INA's definition of an aggravated felony," *id.* (citing *Li v. Ashcroft*, 389 F.3d 892, 895 (9th Cir. 2004); *Randhawa v. Ashcroft*, 298 F.3d 1148, 1151 (9th Cir. 2002)). If the elements of the specific crime of conviction are narrower than or the same as the elements of the generic crime, then the specific crime of conviction categorically

[2]Salazar's aiding and abetting conviction is technically a violation of 18 U.S.C. § 2. That Salazar was convicted of aiding and abetting, however, makes him liable as a principal of the underlying offense. *See, e.g.*, *Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659 (9th Cir. 2008) (because "there is no material distinction between an aider and abettor and principals in any jurisdiction of the United States," aiding and abetting an aggravated felony is "functional equivalent [to] personally committing that offense" directly).

counts as an offense under § 1101(a)(43)(S). *Id.* (citing *Fernandez-Ruiz*, 466 F.3d at 1125).

If, however, the elements of attempted escape from custody are broader than the elements of obstruction of justice as defined in the INA, we must "go beyond the mere fact of conviction" and consider, de novo, whether Salazar-Luviano was necessarily convicted of all the elements of the generic crime. *Taylor*, 495 U.S. at 602. "In making this determination, we . . . 'conduct a limited examination of documents in the record of conviction.' " *Renteria-Morales*, 2008 WL 5192056, at *3 (quoting *Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004)). Because Salazar-Luviano pled guilty to the offense, the examination of the record is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard v. United States*, 544 U.S. 13, 26 (2005). " 'If the record of conviction does not establish that the offense the petitioner committed qualifies as an aggravated felony, the government has not met its burden of proving that the defendant committed an aggravated felony.' " *Renteria-Morales*, 2008 WL 5192056, at *3 (quoting *Ferreira*, 390 F.3d at 1095).

## B.  *Taylor* **Categorical Approach**

Following this framework, we first examine whether attempted escape from custody categorically constitutes an aggravated felony under § 1101(a)(43)(S) as an offense relating to obstruction of justice.

**[1]** "[T]he BIA has interpreted the elements of a generic obstruction of justice offense under § 1101(a)(43)(S) in a precedential decision" to which we defer. *Renteria-Morales*, 2008 WL 5192056, at *7 (citing *In re Espinoza-Gonzalez*, 22 I. & N. Dec. 889). In *Espinoza-Gonzalez*, the BIA explained

with respect to § 1101(a)(43)(S) that "[w]e do not believe that every offense that, by its nature, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice.' " 22 I. & N. Dec. at 893-94. This is so because "Congress did not adopt a generic descriptive phrase such as 'obstructing justice' or 'obstruct justice,' but chose instead a term of art utilized in the United States Code to designate a specific list of crimes." *Id.* at 893. Thus, the question whether a specific offense of conviction counts as an aggravated felony under § 1101(a)(43)(S) depends exclusively on whether "the elements of the offense . . . constitute the crime of obstruction of justice as that term is defined" in the federal criminal law, U.S. Code Title 18, Chapter 73 (18 U.S.C. §§ 1501-1521).[3] *Id.* at 892. *See also Renteria-Morales*, 2008 WL 5192056, at *8 ("[T]he BIA acted reasonably in deriving the definition of 'obstruction of justice' for purposes of § 1101(a)(43)(S) from the body of federal statutes imposing criminal penalties on obstruction of justice offenses.").

**[2]** Here, the parties agree that escape from custody does not match any of the specifically enumerated obstruction offenses and that, to qualify as an aggravated felony, it would have to fall within 18 U.S.C. § 1503's "catchall" provision. The catchall applies to anyone who "corruptly or by threats or force, or by any threatening letter or communication, influ-

---

[3]In 1987, at the time of Salazar-Luviano's conviction, Title 18, Chapter 73 included fourteen enumerated offenses. *See* 18 U.S.C. §§ 1501-1515 (1988). By 2001, Chapter 73 had been amended several times and by then included seventeen enumerated offenses. *See* 18 U.S.C. §§ 1501-1518 (2000). None of the additional three enumerated offenses is relevant to the question presented here. We therefore need not decide (and the parties have not addressed) which version of Chapter 73 should apply—the 1987 version, (when Salazar-Luviano was convicted under 18 U.S.C. § 751), or the 2001 version (when he was charged with removability). *Cf. United States v. Arzate-Nunez*, 18 F.3d 730 (9th Cir. 1994) (ex post facto challenge to classification of a conviction as an aggravated felony *after* commission of the crime but *before* commission of the offense giving rise to removability).

ences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice." 18 U.S.C. § 1503(a).

Salazar-Luviano argues that because § 1503 requires specific intent to interfere with *pending* judicial proceedings, the elements of escape from custody cannot constitute obstruction of justice. The government counters that for an offense to qualify under the catchall provision of § 1503, the act must have only the " 'natural and probable effect' of 'interfering with the due administration of justice,' " and any "escape from lawful custody" necessarily and evidently "impede[s] . . . the judicial process." Even if specific intent were required, says the government, aiding and abetting is a specific intent crime sufficient to bring aiding and abetting an attempted escape from custody within the ambit of § 1503, so interpreted.

**[3]** *United States v. Aguilar*, 515 U.S. 593 (1995), suggests Salazar-Luviano, and not the government, is correct— attempted escape from custody does not constitute obstruction of justice under the § 1503 catchall provision. "[I]nterpret[ing] the omnibus clause of § 1503 narrowly," the Supreme Court has explained that obstruction of justice under that provision requires a defendant to act (1) with knowledge that (2) his actions have the natural and probable effect of interfering with (3) a pending judicial proceeding. *Aguilar*, 515 U.S. at 597, 599. The Court expressly clarified that the catchall provision does not apply to an endeavor to interfere with "some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority." *Id.* And "a defendant lack[ing] knowledge that his actions are likely to affect [a pending judicial] proceeding [necessarily] lacks the requisite intent to obstruct." *Id.*

**[4]** According to this narrow construction, attempted escape from custody does not constitute obstruction of justice within the meaning of § 1503. Both now and at the time of Salazar-

Luviano's conviction in 1987, escape from custody required an (1) escape or attempt to escape from (2) the custody of the Attorney General or his authorized representative. *See* 18 U.S.C. § 751.

**[5]** Because a violation of 18 U.S.C. § 751 does not require the existence of a pending judicial proceeding, much less knowledge of or specific intent[4] to obstruct such a proceeding, one could violate § 751 while serving a sentence in federal prison *after* the conclusion of all judicial proceedings, for example, or (as here) while in detention *before* the commencement of any judicial proceedings. Under either circumstance, a person attempting to escape from custody would fail all three elements of obstructing justice under § 1503.

**[6]** Although the government is probably correct that "an escape from custody of one who is arrested or charged with a [crime] or held for the purpose of extradition, exclusion, or expulsion . . . impedes the prospective judicial or tribunal process," the BIA interpreted § 1101(a)(43)(S) narrowly expressly because it "[did] not believe that every offense that, by its nature, would tend to 'obstruct justice' is an offense that should properly be classified as 'obstruction of justice.' " *Espinoza-Gonzalez*, 22 I. & N. Dec. at 893-94. Attempted escape from custody therefore does not categorically qualify as an aggravated felony under § 1101(a)(43)(S).

---

[4]The government's observation that aiding and abetting is a specific intent crime, is beside the point. Aiding and abetting is not a stand-alone offense—one convicted of aiding and abetting "is guilty of the [underlying] substantive offense as if he committed it directly." *Matter of Beltran*, 20 I. & N. Dec. 521, 525 (BIA 1992). Thus, under the categorical approach, the question is not whether a defendant guilty under 18 U.S.C. §§ 2, 751 has specific intent to aid or abet an escape from custody—rather, it is whether escape from custody requires specific intent to obstruct a pending judicial proceeding. Plainly it does not.

## C.  *Taylor* Modified Categorical Approach

**[7]** Determining that escape from custody does not categorically constitute generic obstruction of justice does not end the inquiry. Salazar-Luviano's conviction could still qualify as an aggravated felony under the "modified" categorical approach if he himself had necessarily been convicted of all the elements of obstruction of justice. *See Taylor*, 495 U.S. at 602. "In making this determination, we . . . 'conduct a limited examination of documents in the record of conviction.' " *Renteria-Morales*, 2008 WL 5192056, at *3 (quoting *Ferreira*, 390 F.3d at 1095).

**[8]** Here, the parties acknowledge that, at the time of Salazar-Luviano's offense, no judicial proceedings had been initiated against those he helped attempt to escape. Nor do the documents in the record of conviction evidence any such proceedings, and the government's proposal that we "presume[ ] judicial proceedings [were] imminent" simply does not meet the bar. Salazar-Luviano could not have known of, and his conduct could not have had the natural and probable effect of interfering with, a judicial proceeding that did not exist. Because Salazar-Luviano's specific conviction does not qualify as an obstruction of justice offense under the modified categorical approach, "the government has not met its burden of proving that the defendant committed an aggravated felony.' " *Renteria-Morales*, 2008 WL 5192056, at *3 (quoting *Ferreira*, 390 F.3d at 1095).

## III.  CONCLUSION

Because Salazar-Luviano's conviction for aiding and abetting an attempt to escape custody does not constitute an aggravated felony within the meaning of § 1101(a)(43)(S) as "an offense relating to obstruction of justice," we conclude that he is eligible for cancellation of removal. We therefore grant his petition for review and remand to the BIA to con-

sider his application for cancellation of removal. *See INS v. Ventura*, 537 U.S. 12 (2002).

**GRANTED**.